EXHIBIT A

2622-CC02487

# IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS

## STATE OF MISSOURI

**Trevon Adams,**
*3024 N Sarah st.*
*Saint Louis, MO*
*63115*

**v.**

**Home Depot U.S.A., Inc.,**
*c/o registered agent*
*C T Corporation system*
*120 South Central avenue*
*Clayton, MO 63105*

Case No.: **(To Be Assigned)**

# PETITION FOR DAMAGES

*(Jury Trial Demanded)*

## I. PARTIES

**1.** Plaintiff **Trevon Adams** is an individual resident of the City of St. Louis, Missouri, and is a licensed professional contractor whose livelihood depends entirely on the possession and use of specialized tools and equipment. Plaintiff is a contractor primarily employed by the City of St. Louis, performing stabilization work on dilapidated buildings in north city. Plaintiff has generated approximately **$292,500 in annual contracting income**, as reflected in check stubs received from the City of St. Louis, attached hereto as **Exhibit A**.

**2.** Defendant **Home Depot U.S.A., Inc.** is a foreign corporation authorized to do business in the State of Missouri and operates retail locations within the City of St. Louis, including the Home Depot store located at **Hanley Road, Store No. 3002**, which is the location where the events giving rise to this action occurred.

## II. JURISDICTION AND VENUE

**3.** This Court has **subject matter jurisdiction** pursuant to Article V, Section 14 of the Missouri Constitution.

**4.** Venue is proper in the **City of St. Louis** because the events giving rise to this action occurred within the City of St. Louis and Defendant conducts substantial, continuous, and systematic business within this jurisdiction.

**5.** This Court has personal jurisdiction over Defendant because Defendant is registered to do business in Missouri, operates retail stores in St. Louis City, and the tortious acts complained of occurred in St. Louis City.

## III. FACTUAL ALLEGATIONS

**6.** Plaintiff is a professional contractor who relies exclusively on his tools and equipment to perform construction and contracting work, which constitutes his primary source of income, generating approximately **$292,500 annually**, as supported by Plaintiff's check stubs received from the City of St. Louis in the year prior to the alleged incident. **(Exhibit A)**.

**7.** On **December 18, 2024**, Plaintiff entered into a written Rental Agreement with Defendant at its Hanley Road Home Depot location (Store No. 3002) for the rental of a **commercial van**. Plaintiff's personal company van was temporarily unavailable while undergoing repairs. A copy of the Rental Agreement is attached hereto as **Exhibit B**.

**8.** Pursuant to the Rental Agreement and with Defendant's full knowledge, Plaintiff loaded the rental van with his professional tools and equipment, including power tools, hand tools, specialty equipment, and personal property necessary to complete multiple **time-sensitive contracting projects** scheduled prior to the Christmas holiday.

**9.** Among the tools loaded into the rental van were **irreplaceable family heirloom tools** passed down to Plaintiff by his late grandfather, a master carpenter. These heirloom tools included antique hand planes, chisels, hand saws, and other antique and vintage tools of significant sentimental and historical value. These items represent a family legacy of craftsmanship spanning multiple generations and cannot be replaced with money.

**10.** The contracting projects were critical to Plaintiff's ability to meet existing contractual obligations with clients and to generate income needed to support his family during the holiday season. Plaintiff had partial written records, invoices, and client communications documenting these existing contractual obligations, which will be produced in discovery as **Exhibit C**.

**11.** Plaintiff lawfully parked the rental van overnight at his residence.

**12.** On the morning of **December 19, 2024**, Plaintiff discovered that the rental van was missing from where it had been lawfully parked. Plaintiff immediately feared the van—and all of his tools and equipment inside it—had been stolen, causing Plaintiff to suffer a **severe anxiety attack**, including shortness of breath, chest tightness, and acute panic.

**13.** A neighbor informed Plaintiff that the van had not been stolen. The neighbor provided Plaintiff with **video footage** clearly depicting the rental van being repossessed in the middle

of the night without any prior notice to Plaintiff. Plaintiff has preserved this video evidence and will produce it in discovery. **(Exhibit D)**

14. Defendant **failed to provide Plaintiff with any advance notice** that the vehicle was subject to repossession, despite Plaintiff's active rental agreement and despite the fact that Plaintiff's tools were loaded in the vehicle with Defendant's knowledge.

15. Plaintiff immediately contacted Defendant to report the incident and to request assistance in locating the van and recovering his property. Defendant **failed and refused to respond** meaningfully to Plaintiff's repeated calls and emails.

16. Plaintiff has been diagnosed with an **anxiety disorder since 2020**. Defendant's conduct—including the failure to notify Plaintiff of the repossession, the failure to safeguard Plaintiff's tools, and the ongoing refusal to communicate—directly and foreseeably caused a significant **exacerbation of Plaintiff's pre-existing anxiety disorder, causing Plaintiff** ongoing mental and emotional harm.

17. As a direct result of the loss of his tools, Plaintiff was unable to complete **three major contracting jobs** already underway, resulting in substantial financial loss, damage to client relationships, and damage to his professional reputation.

18. Plaintiff was further unable to continue or accept new work because he no longer possessed the tools required to perform his trade.

19. In the days following the repossession, Plaintiff contacted numerous tow yards, impound lots, and repossession companies in an attempt to locate the van and recover his property, **all** without success.

20. On **December 26, 2024**, Plaintiff visited Defendant's Hanley Road Home Depot location and observed what appeared to be the same rental van parked on the premises. Plaintiff inspected the vehicle and discovered that **all of his tools and equipment were missing from the van. (Exhibit E)**

21. Plaintiff notified store management of the situation. Defendant agreed only to stop charging Plaintiff rental fees. Notably, prior to Plaintiff raising the issue, Defendant had **continued charging Plaintiff daily rental fees** for the very van that Defendant itself had

repossessed—billing Plaintiff for a vehicle that was never in Plaintiff's possession. Defendant directed Plaintiff to the repossession company to retrieve his tools.

22. When Plaintiff went to the location designated by Defendant, **none of his tools were present**. Plaintiff was given only a phone case. Defendant offered no explanation for the whereabouts of Plaintiff's tools. **(Exhibit F)**.

23. Defendant has provided **no meaningful assistance, compensation, or explanation** for the loss of Plaintiff's property.

24. The partial inventory of Plaintiff's lost tools and equipment is attached hereto as **Exhibit G**. Plaintiff estimates the replacement value of the lost tools and equipment to be no less than **$11,000**, exclusive of the irreplaceable sentimental and heirloom value of his late grandfather's antique tools.

25. Defendant's conduct, both in repossessing the vehicle without safeguarding customer property and in failing to respond after notice, demonstrates **reckless disregard** for the foreseeable harm to Plaintiff's livelihood, health, and wellbeing.

## IV. CAUSES OF ACTION

### COUNT I – NEGLIGENCE

26. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

27. Defendant owed Plaintiff a **duty of reasonable care** in the handling of the rental van and any personal property contained therein, including a duty to: (a) maintain adequate communication with Plaintiff during the rental period; (b) provide Plaintiff with advance notice before repossessing the van; (c) inventory and safeguard any personal property found in a van subject to repossession; and (d) take reasonable steps to return or preserve Plaintiff's property after notice of its loss.

28. Defendant breached its duty of care by:

- Repossessing the rental van without providing advance notice to Plaintiff
- Failing to inventory, document, or safeguard Plaintiff's tools and equipment prior to or during the repossession

- Continuing to charge Plaintiff rental fees for a van that Defendant itself had repossessed
- Failing to communicate with Plaintiff after receiving notice of the loss of Plaintiff's property
- Directing Plaintiff to a repossession company where Plaintiff's tools were not present
- Failing to take any meaningful steps to locate or recover Plaintiff's property

**29.** Defendant's breach of duty was the direct and proximate cause of Plaintiff's damages, including the loss of his tools, lost income, lost business opportunities, damaged professional relationships, and severe emotional distress.

## COUNT II – BREACH OF BAILMENT

**30.** Plaintiff realleges paragraphs 1–29.

**31.** When Plaintiff rented the van from Defendant and loaded it with his tools and equipment with Defendant's full knowledge, a **mutual-benefit bailment** arose between the parties, imposing upon Defendant the duty of ordinary and reasonable care with respect to Plaintiff's personal property.

**32.** Defendant, as bailee, had possession and control of the rental van and its contents, including Plaintiff's tools.

**33.** Defendant breached its duties as bailee by failing to return Plaintiff's property, failing to account for its whereabouts, and failing to take reasonable steps to safeguard Plaintiff's property prior to and during the repossession.

**34.** Under Missouri law, a bailee's failure to return bailed property creates a **rebuttable presumption of negligence**. Defendant cannot account for the disappearance of Plaintiff's tools.

**35.** Defendant is liable for the **full replacement value of the lost property**, including the heirloom tools passed down to Plaintiff by his late grandfather, and all resulting consequential damages.

## COUNT III – CONVERSION

**36.** Plaintiff realleges paragraphs 1–35.

**37.** Plaintiff had a right to possession of his tools and equipment at all times relevant hereto.

38. Defendant exercised **unauthorized dominion and control** over Plaintiff's personal property by repossessing the van containing Plaintiff's tools without notice, failing to safeguard or return the tools, and directing Plaintiff to a location where the tools were not present.

39. Defendant's actions permanently deprived Plaintiff of the use and possession of his tools and equipment.

40. Defendant is liable for the **full fair market value** of the converted property, as well as all consequential damages flowing from the conversion.

**COUNT IV – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

41. Plaintiff realleges paragraphs 1–40.

42. Defendant's conduct—including repossessing Plaintiff's van without notice, failing to safeguard his tools and family heirlooms, refusing to communicate after notice, and directing Plaintiff to a location where his property was not present—created an **unreasonable risk of causing emotional distress** to a person in Plaintiff's position.

43. Defendant knew or should have known that its failure to notify Plaintiff of the repossession and its failure to protect Plaintiff's property would cause Plaintiff to fear his tools had been stolen, and that such fear and loss would cause significant emotional harm, particularly given the sentimental and heirloom nature of the tools.

44. Plaintiff suffered and continues to suffer **severe emotional distress**, including a severe anxiety attack upon discovering the van missing, ongoing anxiety, sleep disturbance, and the significant exacerbation of his diagnosed anxiety disorder.

45. Plaintiff's emotional distress is supported by his diagnosis of an anxiety disorder since 2020, and his medical records will be produced in discovery.

**COUNT V – VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT (§407.020 RSMo)**

46. Plaintiff realleges paragraphs 1–45.

47. The Missouri Merchandising Practices Act ("MMPA"), §407.020 RSMo, prohibits unfair, deceptive, and unlawful practices in connection with the sale, advertisement, or rental of merchandise in trade or commerce.

48. Defendant's van rental services constitute "merchandise" within the meaning of the MMPA.

49. Defendant engaged in unfair and deceptive practices, including but not limited to: (a) renting a van to Plaintiff without disclosing the risk of repossession during the rental period; (b) repossessing the van without customer notice; (c) failing to disclose and implement policies for safeguarding customer property in rented vehicles subject to repossession; (d) continuing to charge Plaintiff rental fees for a van Defendant had already repossessed; and (e) misrepresenting its ability and willingness to assist Plaintiff in recovering his property.

50. Defendant's conduct violated §407.020 RSMo and entitles Plaintiff to actual damages, punitive damages, and **attorneys' fees** pursuant to §407.025 RSMo.

## COUNT VI – REPLEVIN (§533 RSMo)

51. Plaintiff realleges paragraphs 1–50.

52. Plaintiff is entitled to immediate possession of his tools and personal property wrongfully taken and not returned.

53. Plaintiff demands the return of all of his tools and equipment, or in the alternative, their full replacement value plus the irreplaceable value of the heirloom tools.

## COUNT VII – PUNITIVE DAMAGES

54. Plaintiff realleges paragraphs 1–53.

55. Defendant's conduct was **willful, wanton, and reckless**, demonstrating a conscious disregard for Plaintiff's rights, property, and health. Specifically:

- Defendant repossessed the van without any notice to Plaintiff, despite knowing customers regularly store personal property in rented vehicles
- Defendant made no effort to inventory or preserve customer property during repossession
- Defendant continued charging Plaintiff rental fees for a van Defendant itself had repossessed
- Defendant refused to meaningfully respond to Plaintiff's repeated communications after notice of the loss

- Defendant directed Plaintiff to a location where his property was not present, without explanation
- Defendant's indifference to Plaintiff's loss continued for weeks despite Plaintiff's documented efforts to recover his property

56. Punitive damages are necessary to **punish Defendant** for its egregious conduct and to **deter Defendant and others** from engaging in similar misconduct in the future.

## V. DAMAGES

57. As a direct and proximate result of Defendant's acts and omissions, Plaintiff has suffered and continues to suffer substantial damages, including but not limited to:

- Loss and replacement value of professional tools and equipment (estimated at no less than $11,000)
- Irreplaceable loss of family heirloom tools passed down from Plaintiff's late grandfather
- Lost income from three canceled contracting jobs
- Business interruption losses and lost future contracting opportunities
- Damage to Plaintiff's professional reputation and client relationships
- Severe emotional distress and exacerbation of diagnosed anxiety disorder
- Ongoing financial hardship

58. Plaintiff's damages, taken as a whole, exceed **Two Hundred Fifty Thousand Dollars ($250,000)** and continue to accrue, including but not limited to the loss of professional tools and irreplaceable family heirloom property, lost income and business interruption losses, damage to professional reputation and client relationships, and severe and ongoing emotional distress resulting from Defendant's negligent, reckless, and indifferent conduct.

59. Defendant's conduct was willful, wanton, and reckless, justifying an award of **punitive damages** in an amount sufficient to punish Defendant and deter future misconduct.

60. Plaintiff is entitled to recover pre-judgment and post-judgment interest, costs of suit, attorneys' fees pursuant to the MMPA, and such other and further relief as the Court deems just and proper.

**JURY DEMAND**

**Plaintiff demands a trial by jury on all issues so triable.**

Respectfully submitted,

**Trevon Adams**

Plaintiff, Pro Se

City of St. Louis, Missouri

**EXHIBIT REFERENCE LIST**

**Exhibit A** — Check stubs / income records ($292,500 annual income from City of St. Louis)

**Exhibit B** — Home Depot Rental Agreement (signed December 18, 2024)

**Exhibit C** — Client contracts and job records (invoices, texts, emails for three lost jobs)

**Exhibit D** — Video footage of van being repossessed (December 19, 2024)

**Exhibit E** — Video footage of empty van at Home Depot (December 26, 2024)

**Exhibit F** — Repossession company visit documentation

**Exhibit G** — Partial tool inventory (replacement value no less than $11,000, exclusive of heirloom value)

*Note to Plaintiff: Attach physical copies of each exhibit behind this page in alphabetical order before filing.*

Trevon Adams

[signature]

6-15-2026

State of: Missouri

County of: St. Louis City

The foregoing instrument was acknowledged before me 15 day of June 2026

John Newcomer [signature]

Your Name Here, Notary Public

My Commission Expires 01/22/28

JOHN NEWCOMER
Notary Public - Notary Seal
STATE OF MISSOURI
St. Louis County
My Commission Expires: Jan. 22, 2028
Commission # 24118254


EXHIBIT A

2622-CC02087

STORE 3002 Hanley Rd & 40
1603 S Hanley Rd
Brentwood, MO 63144
(314)951-1300

CONTRACT # 428373
Status CLOSED

TREVON ADAMS
3024 N SARAH ST
ST LOUIS, MO 63115
(314) 703-6986

Rental Center Hours
MON 6A-9P TUE 6A-9P WED 6A-9P THU 6A-9P FRI 6A-9P SAT 6A-9P SUN 7A-8P

ACTUAL DURATION
# 1 Day, 1 Hour, 59 Minutes

| | | | |
|---|---|---|---|
| 00 | 40577 | 12/18/24 | 30022412180713484242837302 |
| 00 | 42045 | 12/19/24 | 30022412180734842428 37303 |

TREVON ADAMS 12/18/2024, 1:48 PM
shelter 12/19/2024, 3:48 PM
2410690054S
04/07/2025

| Tool Description | Charges | Amount |
|---|---|---|
| Cargo Van (illegible) | Tool Rental Fee | $182.75 |
| | SubTotal | $182.75 |

| | |
|---|---|
| Rental Subtotal | $182.75 |
| Sales Tax | $17.80 |
| **Contract Total** | **$200.55** |
| Deposit - PAID 12/18/24 (VISA ending 2887) | $150.00 |
| **Balance Charged** (VISA ending 2887) | **$50.55** |
| Outstanding Balance | $0.00 |

**RENTAL FEE CALCULATOR DISCLAIMER**

Home Depot uses a Rental Calculator to insure our customers to get the lowest rates possible for the time they had the tool.

**TERMS & CONDITIONS**

I agree that no representative of The Home Depot is authorized to make any promise, warranty, or representation to me other than those reflected in writing in the Agreement. I agree to the Terms & Conditions and understand that the Agreement cannot be modified or changed except in writing signed by both parties. With respect to equipment I am renting, I have received the equipment referenced in the Agreement. In the event that I am returning equipment, I acknowledge and agree that I am returning the listed rental equipment, the total charges are correct, and additional charges may apply if the equipment is returned damaged.

Exhibit B

Exhibit C

## GENERAL CONTRACTING AGREEMENT

This General Contracting Agreement ("Agreement") is made and entered into on Octobers 26 2024 , by and between:

1. PARTIES

**Client:**

- ☐ Styled by Shade
- ☐ Business Address: 2809 Vandeventer, St. Louis, MO 63115
- ☐ Phone: 313-850-4074
- ☐ Email: styledxshade@gmail.com

**Contractor**

- ☐ Aspire 19 Investments, LLC
- ☐ Business Address: 3024 N Sarah St, St. Louis, MO 63115
- ☐ Phone: 314-489-8200
- ☐ Email: contact@aspire19.com

2. SCOPE OF WORK

Aspire 19 Investments, LLC agrees to complete the following general contracting work at Styled by Shade, located at 2809 Vandeventer, St. Louis, MO. The total cost of the project is $16,215.00, which includes labor, materials, and necessary permits (if applicable).

1 PAINTING – $2,200

- Prep and patch all walls and ceilings as needed.
- Apply two coats of high-quality, washable interior paint to all walls.
- Apply trim and door paint as necessary.
- Includes labor and materials.

2 HAIR WASHING STATION & PLUMBING – $3,500

- Remove any existing fixtures interfering with new installation.
- Install [4] new hair washing stations.
- Run new plumbing lines for proper drainage and water supply.
- Install new hot/cold water valves and ensure proper water pressure.
- Labor and materials included (excluding salon chairs & sinks provided by Client).

3. DRYER ELECTRICAL & INSTALLATION – $3,000

- Upgrade electrical system to support [2] salon hair dryers.
- Install new outlets with dedicated circuits for hair dryers.
- Secure and install dryers in the designated areas.
- Test all electrical connections to ensure compliance with safety standards.
- Includes labor, wiring, and electrical materials.

4. FLOORING RENOVATION – $4,000

- Remove existing flooring and prepare the surface for new installation.
- Install luxury vinyl plank, across 1200 sqft.
- Apply sealant and finish for long-term durability.
- Includes flooring materials, labor, and disposal of old flooring.

5. ADDITION OF SALON ITEMS & FIXTURES – $2,000

- Install 4 new workstations for hairstylists.
- Mount shelving and storage cabinets.
- Assemble and position styling chairs, mirrors, and additional salon items.
- Secure and organize product display areas.
- Includes labor (materials and salon items provided by Client).

6. GENERAL CLEANUP & FINAL TOUCHES – $1,515

- Final site cleanup, including disposal of debris

- Touch-ups on paint and flooring as needed.
- Ensure all installations meet quality standards and client satisfaction.
- Conduct final walkthrough with the client for approval.

3. PROJECT TIMELINE

- Start Date: November 1 2024
- Completion Date: December 24 2024
- If delays occur due to unforeseen circumstances (e.g., material shortages, weather, or permit issues), Contractor shall notify the Client promptly.

4. PAYMENT TERMS

The total contract amount for the scope of work is $16,215.00, payable as follows:

- No deposit at contract signing
- 50% payment when half of the work is completed
- Final Payment: due upon completion and final walkthrough.

Payments shall be made via check. If payment is not received within 10 days of the due date, a late fee of $1500 may be applied.

5. CHANGE ORDERS

Any changes to the scope of work must be agreed upon in writing. Additional work beyond the agreed scope will be billed at $30/hr.

6. MATERIALS & WARRANTIES

- Aspire 19 Investments, LLC will supply materials unless otherwise specified.
- Workmanship is warranted for [warranty period, e.g., 1 year] from the completion date
- Manufacturer warranties on materials will be transferred to the Client.

7. SITE CONDITIONS & ACCESS

- Client shall provide access to the property during agreed work hours.

- Contractor is not responsible for unforeseen conditions (e.g., hidden damage, mold, asbestos) that may require additional work.

8. INSURANCE & LIABILITY

- Aspire 19 Investments, LLC shall carry [General Liability Insurance, Worker's Compensation, etc.]
- Client shall maintain property insurance.
- Contractor is not liable for delays or damages caused by third parties.

9. TERMINATION CLAUSE

- Either party may terminate this contract with [number] days' written notice.
- If terminated by Client, Contractor is entitled to payment for completed work and expenses incurred.

10. GOVERNING LAW

This contract shall be governed by the laws of Missouri.

SIGNATURES

By signing below, both parties acknowledge and agree to the terms of this Agreement.

Client Signature: [signature]

Styled by Shade

By [signature] (Authorized Representative)

Title

Date

Contractor Signature [signature]

Aspire 19 Investments, LLC

By [signature] (Authorized Representative)

Title

Date 11/31/24

# ATTACHMENTS

SCAN FOR VAN REPO VIDEO.

Exhibit D

SCAN FOR VIDEO OF VAN DISCOVERY

Exhibit E

Exhibit G

# CONTRACTOR TOOL INVENTORY EXHIBIT

**Heirloom / Antique Tools (Passed Down Through Family Generations):**

Antique hand planes (quantity TBD) – irreplaceable sentimental value
Antique chisels (set) – irreplaceable sentimental value
Antique hand saws – irreplaceable sentimental value
Vintage carpenter squares – irreplaceable sentimental value
Vintage wood-working hand tools – irreplaceable sentimental value
Other antique/vintage tools passed down through Plaintiff's family – irreplaceable sentimental value

**Professional / Power Tools (Partial List – Estimated Replacement Values):**

Milwaukee M18 Fuel Drill/Driver Kit – Est. value: $350
Milwaukee Impact Driver – Est. value: $250
Milwaukee Circular Saw – Est. value: $300
Milwaukee Reciprocating Saw (Sawzall) – Est. value: $250
Milwaukee Oscillating Multi-Tool – Est. value: $220
Milwaukee Hammer Drill – Est. value: $350
Milwaukee Angle Grinder – Est. value: $220
Milwaukee Cordless Jigsaw – Est. value: $220

DeWalt 12" Sliding Miter Saw – Est. value: $750
DeWalt Portable Table Saw – Est. value: $850
Air Compressor – Est. value: $400
Framing Nailer – Est. value: $350
Finish Nailer – Est. value: $300
Brad Nailer – Est. value: $250

Lithium-Ion Battery Packs (multiple) – Est. Value: $1,000
Battery Chargers (multiple) – Est. value: $300

Socket & Ratchet Sets – Est. value: $350
Professional Hand Tool Sets – Est. value: $500
Levels / Measuring Equipment – Est. value: $250
Laser Level – Est. value: $350
Extension Cords / Work Lighting – Est. value: $400

Packout / Modular Storage System – Est. value: $1,200
Rolling Tool Chest – Est. value: $700
Tool Bags / Backpacks – Est. value: $300

Ladders / Job Site Equipment – Est. value: $700
Miscellaneous Contractor Supplies & Consumables – Est. value: $500

Other tools and equipment accumulated over approximately fifteen (15) years of contracting work — Plaintiff continuing to identify and inventory losses.

**TOTAL ESTIMATED REPLACEMENT VALUE:**
**$11,000–$13,000+ (exclusive of heirloom / sentimental value)**

# Summons in Civil Case

IN THE 22ND JUDICIAL CIRCUIT, CITY OF ST LOUIS, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>CHRISTOPHER EDWARD MCGRAUGH | Case Number: **2622-CC02487** | |
| Plaintiff/Petitioner:<br>TREVON ADAMS<br>vs. | Plaintiff's/Petitioner's Attorney/Address.<br>TREVON ADAMS<br>3024 N SARAH ST<br>ST LOUIS, MO 63115 | |
| Defendant/Respondent:<br>HOME DEPOT USA INC | Court Address:<br>CIVIL COURTS BUILDING<br>10 N TUCKER BLVD<br>SAINT LOUIS, MO 63101 | (Date File Stamp for Return) |
| Nature of Suit:<br>CC Breach of Contract | | |

**The State of Missouri to:** **HOME DEPOT USA INC**
**Alias:**
**CT CORPORATION SYSTEM**
**120 S CENTRAL AVENUE**
**CLAYTON, MO 63105**

**Other Addresses:**

**ST LOUIS COUNTY SHERIFF**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

***COURT SEAL OF***

***CITY OF ST LOUIS***

6/22/2026
Date

[signature]
Clerk

**Further Information:**

CSC

null / ALL
Transmittal Number: 34385719
Date Processed: 06/26/2026

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Svea Sharaf<br>The Home Depot, Inc.<br>2455 Paces Ferry Rd SE<br>Atlanta, GA 30339-1834 |
| **Electronic copy provided to:** | Svea Sharaf<br>Micah Ascano |

| | |
|---|---|
| **Entity:** | Home Depot U.S.A., Inc.<br>Entity ID Number 2483807 |
| **Entity Served:** | Home Depot U.S.A., Inc. |
| **Title of Action:** | Adams, Trevon vs. Home Depot U.S.A., Inc. |
| **Matter Name/ID:** | Adams, Trevon vs. Home Depot U.S.A., Inc. (19489326) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Personal Injury |
| **Court/Agency:** | St. Louis City Circuit Court, MO |
| **Case/Reference No:** | 2622-CC02487 |
| **Jurisdiction Served:** | Missouri |
| **Date Served on CSC:** | 06/25/2026 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Trevon Adams<br>Not Shown |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674 (888) 690-2882 | sop@cscglobal.com